# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| **STRUTHA C. ROUSE** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | ) **CIVIL ACTION** |
| | ) |
| | ) **CASE NO.** |
| | ) |
| **MEGAN J. BRENNAN, POSTMASTER GENERAL FOR UNITED STATES POSTAL SERVICE** | ) ) ) |
| | ) |
| **Defendant.** | ) |

## COMPLAINT

COMES NOW, Strutha C. Rouse, (hereafter "Plaintiff") and files this Complaint against Megan Brennan in her capacity as Postmaster General for the United States Postal Service (hereafter "Defendant" as follows:

## INTRODUCTION

1.

This is an action for discrimination pursuant to 42 U.S.C. § 2000e et seq. (Title VII of the Civil Rights Act of 1964), as amended by the Civil Rights Act of 1991.

## JURISDICTION

2.

The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343.

3.

Defendant is a person as defined by 42 U.S.C. § 2000e(a).

4.

This Court has personal jurisdiction over Defendant and, at all relevant times, Defendant took actions within the State of Georgia to specifically deprive Plaintiff of rights and privileges afforded to others outside his protected class.

5.

All actions by Defendant, as alleged, occurred within the Northern District of Georgia.  As such, Plaintiff contends that venue in this district is proper for the Defendant pursuant to 28 U.S.C. § 1391(b) & (c).

## THE PARTIES

6.

The Plaintiff is a sixty-two (62) year old African American male residing in Bartow County Georgia. Plaintiff graduated from the Citadel in Charleston, SC, with a degree in Political Science, served his country as an officer in the U.S. Marines and amassed valuable transferable skills throughout a lengthy professional career prior to his work with the U.S. Postal Service.

## BACKGROUND FACTS AND PROCEDURAL HISTORY

7.

On August 20, 2013, Defendant hired Plaintiff to work as a Rural Carrier Associate (RCA) at the Cartersville Post Office in Cartersville Georgia.  At all relevant times, Plaintiff reported to Daniel Parker, Supervisor of Customer Services and worked under Gregory Blake as the Postmaster.

8.

Plaintiff is an African-American male, who identifies his color as black and is currently sixty-two (62) years old. However, at the time of his hire and termination, Plaintiff was sixty-one (61) years old.

9.

Given the basic requirements of his job, Plaintiff contends that City Carriers, Rural Carriers as well as other (RCAs) are comparators for the purpose of analyzing his contentions related to his unfair termination.

10.

Plaintiff contends that the Agreement between the US Postal Service and the National Rural Letter Carriers' Association articulated in Handbook EL-902 pertains to/governs/defines much of the facts and circumstances and responsibilities of US Postal Service with respect to decisions of management.

11.

Plaintiff contends that the Rural Carriers Duties and Responsibilities Handbook PO-603 pertains to/governs/defines much of the duties and obligations of Postal management, including but not limited to Dan Parker and Gregory Blake, as to employees, including but not limited to Plaintiff.

12.

Plaintiff contends that the Employee and Labor Relations Manual (ELM) 37, pertains to/governs/defines much of the duties of Dan Parker and Gregory Blake, as to the supervision and evaluative measures that management is required to provide to employees, including but not limited to Plaintiff.

13.

Plaintiff contends that the Employment and Placement Handbook EL-312, pertains to/governs/defines much of the duties of Dan Parker and Gregory Blake, as to the supervision and evaluative measures that management is required to provide to employees, including but not limited to Plaintiff.

14.

At all relevant times, Plaintiff worked as a RCA without incident through his initial training and when he entered active service within the Cartersville Post Office.

15.

Plaintiff never received any complaints from management, nor failed to report to work as scheduled.

16.

Plaintiff never had any motor vehicle accidents, placed citizens at risk, or was observed on film or otherwise mishandling packages or otherwise portraying the Postal Service in a bad light.

17.

Plaintiff was told that due to his role as a RCA, there may be instances where he would have an opportunity to work upon short notice.

18.

Plaintiff was not informed that, due to his role as an RCA, he could not plan normal activities with his family in advance, engage in personal religious celebrations with his family, or otherwise carry on a normal work or personal life outside of his work at the Post Office.

19.

Plaintiff routinely checked in with Parker and notified him of his desire to pitch-in and work when an opportunity materialized.

20.

Plaintiff routinely worked approximately one to two times per week, either running routes as a rural carrier, assisting other colleagues at the Post Office, transporting mail to other postal branches in the area, and/or performing maintenance on vehicles after hours.

21.

Due to his performance and demonstrated responsibility, Plaintiff was amongst few RCAs that were provided a key to the Post Office and tasked with performing routine/preventative maintenance on vehicles used by postal carriers. Although this job was not included within the scope of the duties of RCAs, Plaintiff made himself available for extra work as the opportunity materialized.

22.

Plaintiff earned an hourly wage of $16.26 per hour.  Plaintiff was informed that upon completion of his probationary period, i.e. ninety (90) working days or one year, he would receive a full time position as a Rural Carrier, an increase in his hourly wage (commensurate with other Rural Carriers), full health and dental benefits, and a retirement/pension.

23.

At no time did Daniel Parker provide Plaintiff with any formal or informal evaluations for the purpose of remediating any perceived or manufactured problems with his performance.

24.

At no time did Daniel Parker or Gregory Blake inform Plaintiff that he was entitled to or could have benefited from an evaluation as prescribed in PS Form 1750.

25.

During the course of his work as an RCA, Plaintiff, at times, requested an opportunity for additional assistance on his route given that he did not have the benefit of working the route consistently.[1]

---

[1] Indeed, Plaintiff worked his route in most instances only once per week and had no prior experience processing or delivering mail. Plaintiff contends that the inconsistency of his work schedule made the route more difficult to adjust to because he did not have the benefit of regularly processing the mail to the nearly

26.

During the performance of his work, Plaintiff received feedback and guidance from more seasoned Rural Carriers and colleagues within the Post Office with respect to the proper performance of his duties.

27.

Among other things, Plaintiff was told by one of his more experienced, white male, colleagues to sign for express mail packages before delivery to mail recipients.

28.

Plaintiff performed work consistent with that advice until such time that <u>he approached Parker and asked for additional clarification</u>. Parker corrected Plaintiff and told him to discontinue signing for packages in the manner previously described. <u>Thereafter, Plaintiff followed Parker's direction</u>.

29.

Plaintiff requested this clarification from Parker on or about January 17, 2014.

30.

Due to the misinformation from one of his colleagues, as previously described, one express mail package was lost. The value of the package was $98.00.

31.

Plaintiff contends that regular mail packages and express mail packages have been lost by postal employees in the past and that employees have not been terminated as a result.

32.

Plaintiff contends that Parker and Blake allowed a white male employee to simply pay for the value of a lost express mail package instead of terminating the employee.

33.

Plaintiff contends that Parker and Blake did not issue this white male employee a letter of warning (LOW), letter of suspension (LOS), or a letter of termination following receipt of information related to the lost express mail package.  This is true even though

---

600 stops along the route, as other comparators/colleagues, and most of his counterparts were not only more seasoned but were significantly younger.

the employee had informal evaluations from Parker and others, formal training, on the job training, and extensive experience performing the duties of the job.

34.

Neither Parker nor Blake offered Plaintiff an option or an opportunity to simply pay for the lost express mail package to resolve the issue.

35.

Despite the fact that the express mail package was lost in the middle of January, Plaintiff continued to work at least up until January 27, 2014.

36.

Following Plaintiff's request for clarification from Parker as to the handling of express mail packages, Plaintiff did not receive any evaluations, warning, reprimand or other form of progressive discipline that would otherwise indicate that his performance was problematic.

37.

During the holiday season, Plaintiff spoke with Parker about his desire to spend time with his family following the busy Christmas and New Year mailing period. On January 30, 2014, Plaintiff notified Parker via phone call and a text that he wanted to go out of town with his family to observe personal and religious functions. On January 31, 2014, Parker approved Plaintiff's request for leave, but due to the impression Plaintiff received from his curt text message, Plaintiff was concerned that taking even a couple days to spend with his family could jeopardize his position.

38.

Later in the day on January 31, 2014, Plaintiff notified Parker that he would not take any time off with his family and that he would be available for work whenever Parker called.

39.

On February 2, 2014, Plaintiff contacted Parker to determine whether he was scheduled for work. However, Parker refused to place him on the schedule from that point forward.

40.

Due to the lack of hours provided, Plaintiff called Parker on several occasions and

also sent him test messages regarding his desire to work.

41.

When Parker continued to ignore Plaintiff's requests for consideration/additional hours, Plaintiff went to the Post Office in person to try to determine why he was not being scheduled.

42.

Parker told Plaintiff that Blake would not allow him to put him back on the schedule because he lost an express mail package.

43.

During the conversation, Parker notified Plaintiff that other employees, e.g. "Mitch", lost express mail packages and were not terminated but were instead allowed to pay for the value of the package and continue to work.

44.

As such Plaintiff asked Parker and Blake for the same opportunity as that provided to other colleagues, i.e. to pay the value of the lost package.

45.

Parker and Blake refused to treat Plaintiff the same as "Mitch" and other employees and on March 11, 2014, nearly two months after Parker refused to place Plaintiff on the schedule for additional work, Blake issued a letter of termination to Plaintiff and cited a "failure to maintain the duties of your job" as grounds for termination. (See Exhibit A – Letter of Termination)

46.

According to the letter of termination, he would be able to work until April 12, 2014.

47.

Not only did Defendants unfairly terminate Plaintiff, they also failed to provide him any notice of deficient performance prior to his termination and, as a consequence, deprived him of a meaningful and appreciable opportunity to fairly compete for his position.

48.

Throughout the course of his work as a RCA, Plaintiff was not provided any

accommodation or adjustment to his route given his age and unfamiliarity with the route and pace of the 600 deliveries that must be completed within a short window of time.

49.

Following his termination, Plaintiff had the burden of scraping by with extremely discounted wages in the form of short-term unemployment benefits.

50.

After repeated requests for clarity as to the justification for his termination went unanswered, on March 27, 2014, Plaintiff sent a written request for clarification as to the specific reasons for his termination because again, he never received any prior notice, evaluations, reprimand, and/or progressive discipline which would otherwise serve to put him on notice of any deficiency and he wanted to be able to obtain future employment (including but not limited to government employment) and he did not want the burden of having disparaging and untrue statements in his file regarding his performance. (See Exhibit B – Request for Clarification)

51.

At some point later, Plaintiff received a formal Notice of Personnel Action from the Postal Service. Curiously enough, the Notice was dated March 28, 2014, stated that Plaintiff's last day in service was January 27, 2014, and that the reason for termination was "services were no longer required." The official notice from the Postal Service indicates on the bottom right of the form that it is an "Employee Copy – Retain for Future Reference." (See Exhibit C – Notice of Separation)

52.

If Plaintiff's services were no longer required on January 27, 2014, Plaintiff contends that it is illogical that Parker would continue to communicate with Plaintiff and give him the impression that he was still an RCA.

53.

Similarly, if the basis for Plaintiff's termination was his "failure to perform the duties of his position," Plaintiff contends that it is illogical that the Notice of Separation would state "services no longer required."

54.

Defendant's actions/inactions, by and through the discriminatory and nepotistic

acts of Parker and Blake, caused Plaintiff undue financial hardship, psychological and emotional distress, and most importantly, prevented Plaintiff from developing a valuable career servicing his country within the U.S. Postal Service.

55.

Following Plaintiff's unfair termination, he filed an EEOC complaint and exhausted all administrative remedies available to him before filing this, his timely Complaint.

56.

Interestingly enough, during the process of advancing his EEOC claims of unfair treatment based upon his race, color, gender and/or age, Defendant provided copies of information contained within Plaintiff's file.

57.

As expected, Plaintiff did not have one single document in his file supporting Defendant's claims that he was either unavailable for work, exhibited subpar performance, was counseled, was reprimanded and/or received any form of performance counseling / progressive discipline. Each document/affidavit in his file was a later creation, crafted for the sole purpose of establishing an ephemeral basis of legitimacy for Defendants unfair and discriminatory practices.

58.

Of note, Defendant provided a "doctored" Notification of Personnel Action within which the reason for his termination contained, "Services no longer required" and "Employee was separated for inability to perform the required tasks of an RCA." The "doctored" document is a subsequent, self-serving addition to his file which served to help substantiate Defendant's baseless claims. Worst of all, it is clear from the bottom of the form (which states: "Opf Copy") that Plaintiff was never provided a copy of this form before or immediately after its creation. (See Exhibit D – "Doctored" Notice of Separation)

## **COUNT ONE: TITLE VII RACE**

59.

Plaintiff incorporates herein paragraphs 1-58 of his Complaint.

60.

Defendant engaged in intentional race discrimination in the terms and conditions of Plaintiff's employment, including, but not limited to, the Plaintiff's termination.

61.

Defendants' conduct violates Title VII.

62.

Plaintiff satisfied all of the technical prerequisites for filing suit.

63.

Defendants' discriminatory conduct, in violation of Title VII, has caused the Plaintiff to suffer loss of pay, benefits, and prestige.

64.

Defendant's discriminatory conduct, in violation of Title VII, has caused the Plaintiff to suffer mental and emotional distress, entitling her to compensatory, punitive damages, and attorney fees pursuant to 42 U.S.C. § 1981a.

## COUNT TWO: TITLE VII GENDER

65.

Plaintiff incorporates herein paragraphs 1-64 of his Complaint.

66.

Defendant engaged in intentional gender discrimination in the terms and conditions of Plaintiff's employment, including, but not limited to, the Plaintiff's termination.

67.

Defendants' conduct violates Title VII.

68.

Plaintiff satisfied all of the technical prerequisites for filing suit.

69.

Defendant's discriminatory conduct, in violation of Title VII, has caused Plaintiff to suffer loss of pay, benefits, and prestige.

70.

Defendants' discriminatory conduct, in violation of Title VII, has caused the Plaintiff to suffer mental and emotional distress, entitling her to compensatory, punitive damages, and attorney fees pursuant to 42 U.S.C. § 1981a.

### **COUNT AGE: TITLE VII AGE**

71.

Plaintiff incorporates herein paragraphs 1-70 of his Complaint

72.

Defendant engaged in intentional age discrimination in the terms and conditions of Plaintiff's employment, including, but not limited to, the Plaintiff's termination.

73.

Defendants' conduct violates the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq.

74.

Plaintiff satisfied all of the technical prerequisites for filing suit.

75.

But for Plaintiff's limitations due to his age and inability to ambulate and move as quickly as colleagues much younger he would not have been unfairly labeled as inefficient and would have still have his job today.

76.

Defendant's decision to terminate Plaintiff was solely on account of the time he took to process his route. Indeed, there are no facts/evidence whatsoever related to any misconduct on part of Plaintiff, evidence of prior reprimands, progressive discipline, or failures of Plaintiff to report to work as scheduled.

77.

Assuming, arguendo, that Plaintiff could not perform his route with the same speed of his younger, more experienced peers, no accommodation or adjustment in route was provided or offered to Plaintiff before the extreme sanction of termination.

For all the forgoing reasons, Plaintiff prays for relief as follows:

1. The Court order Defendants to reinstate Plaintiff's employment;

2. The Court grant full front pay to the Plaintiff;

3. The Court grant full back pay to the Plaintiff;

4. The Court grant compensatory damages for emotional distress, humiliation and/or other damages caused by Defendant's conduct;

5. The Court grant punitive damages for Defendant's reckless, malicious and/or indifferent conduct;

6. The Court grant Plaintiff full employment benefits he would have enjoyed had he not been discriminated against/treated differently than her peers;

7. The Court grant Plaintiff expenses of litigation, including reasonable attorney fees pursuant to Title VII and/or 42 U.S.C. § 1988;

8. The Court grant Plaintiff a jury trial;

9. The Court grant all other relief deemed just and proper; and

10. The Court grant a temporary and/or permanent injunctive relief thereby prohibiting Defendants from engaging in similar discriminatory conduct.

Respectfully submitted this 3rd day of March 2015.

/s/ S. Carlton Rouse, Esq.
S. Carlton Rouse, Esq.
Georgia Bar No. 003583
Attorney for Plaintiff

**ROUSE & COMPANY, LLC**
3375 Centerville Hwy
P.O. Box 392105
Snellville, GA 30039-9997
(678)360-0403(t)
(678)658-9093(f)
s.carlton@rousecolaw.com

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| **STRUTHA C. ROUSE** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) **CIVIL ACTION** |
| | ) |
| | ) **CASE NO.** |
| | ) |
| **MEGAN J. BRENNAN, POSTMASTER GENERAL FOR UNITED STATES POSTAL SERVICE** | ) ) ) ) |
| | ) |
| **Defendant.** | ) |

## CERTIFICATE OF SERVICE

I hereby certify that I have served a true and correct copy of the foregoing **COMPLAINT** upon Defendant by depositing a true and correct copy of the same in the United States mail, proper postage affixed thereto, addressed as follows:

> **Megan J. Brennan, Postmaster General USPS**
> **c/o Thomas J. Marshall, Gen. Counsel USPS**
> **US Postal Service**
> **475 L'Enfant Plz SW, Room 6004**
> **Washington, DC 20260-0004**

> **Megan J. Brennan, Postmaster General USPS**
> **c/o John A. Horn, US Attorney NDGA**
> **US Attorney's Office**
> **Richard B. Russell Federal Blg**
> **75 Spring Street, SW**
> **Suite 600**
> **Atlanta, GA 30303-3309**

> **Megan J. Brennan, Postmaster General**
> **U.S. Postal Service**
> **US Postal Service**
> **475 L'Enfant Plz SW,**
> **Washington, DC 20260-0004**

Respectfully submitted this 3rd day of March 2015.

/s/ S. Carlton Rouse, Esq.
S. Carlton Rouse, Esq.
Georgia Bar No. 003583
Attorney for Plaintiff

**ROUSE & COMPANY, LLC**
3375 Centerville Hwy
P.O. Box 392105
Snellville, GA 30039-9997
(678)360-0403(t)
(678)658-9093(f)
s.carlton@rousecolaw.com